IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-04-0455-16 |
| | § | |
| TERRY HIDALGO | § | (Civil Action No. H-07-1511) |
| | § | |

## MEMORANDUM AND ORDER

The defendant, Terry Hidalgo, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 along with a supporting memorandum.  (Doc. # 655).  Hidalgo has amended or supplemented his § 2255 motion three times.  (Docs. # 662, # 670, # 672).  Hidalgo has also filed more than one request for discovery.  (Docs. # 678, # 680).  The government has answered with a motion to dismiss, arguing that Hidalgo is not entitled to relief under § 2255.  (Doc. # 695). Hidalgo has filed a reply.  (Doc. # 697).  The Court has carefully reviewed all pertinent matters in this criminal case.  Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** Hidalgo's motion for relief under 28 U.S.C. § 2255 and **dismisses** the corresponding civil action (H-07-1511) for the reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

A federal grand jury in this district returned a multi-count indictment against Hidalgo and several co-defendants in connection with a conspiracy to traffic methamphetamine and to launder money.  On May 17, 2005, a jury found Hidalgo guilty as charged in count one

of the indictment of conspiracy to possess with intent to distribute fifty (50) grams or more

of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.  On

October 28, 2005, the Court sentenced Hidalgo to serve one-hundred (100) months in prison,

followed by a four-year term of supervised release.  (Doc. # 591, Sentencing Transcript).

On direct appeal, Hidalgo challenged the sufficiency of the evidence and argued that

he was entrapped by government agents.  Hidalgo argued further that the jury instruction on

entrapment was erroneous, that he was wrongfully denied a jury instruction on the "public

authority defense," and that the Court erred by admitting evidence of a recorded

conversation, among other things. The United States Court of Appeals for the Fifth Circuit

affirmed the conviction and sentence after making the following findings based on the

evidence presented at trial:

> This case stems from defendant-appellant Terry Hidalgo's involvement
> in a large methamphetamine trafficking organization which operated in
> Michiocan, Mexico; Harris County, Texas; and Montgomery County, Texas.
> Three sets of events are at issue in this appeal, and the government argues that
> the jury could have convicted Hidalgo of conspiracy based on any of these
> events.
>
> The first set of events occurred in April 2004. At this point in time,
> Hidalgo owned two homes-one in Montgomery County, Texas, and the other
> in Lafayette, Louisiana-and traveled frequently between the two properties.
> Mark Wilburn testified at trial that in April 2004 he took Hidalgo, whom he
> had known for about four years, from Hidalgo's Montgomery County property
> to Hidalgo's home in Lafayette, Louisiana. Wilburn stated that during this trip,
> Hidalgo sold one ounce of methamphetamine and gave Wilburn $600 for the
> ride to Louisiana.
>
> The second set of events occurred between May 23 and May 25, 2004.
> According to Wilburn's testimony, the following transactions occurred.
> Hidalgo told Christopher Savoy that Hidalgo could sell methamphetamine in

2

Louisiana for $2000 an ounce, and Savoy then picked up some methamphetamine for Hidalgo to sell. Wilburn and Savoy drove to Hidalgo's house in Lafayette and delivered two ounces of methamphetamine to Hidalgo. Although Hidalgo did not pay for the methamphetamine up-front, he told Savoy that he could sell one ounce of the methamphetamine to an individual named Bill for $2000. Before returning to Texas, Wilburn and Savoy picked up the money Hidalgo owed them and a half-ounce of methamphetamine.[1]

The third set of events occurred in June and July 2004. In early June 2004, Savoy began providing information to the DEA on the drug organization's activities.[2]  Hidalgo and Savoy spoke on the telephone numerous times about the sale of Hidalgo's Montgomery County property. Savoy, Bradford Crain, and Hidalgo met on June 16, 2004 to discuss the potential sale. Hidalgo testified that he wanted to sell the property for cash, but the government alleges that the deal was for $171,000 worth of methamphetamine (about 114 ounces). The government's witnesses testified that on June 16, 2004, Crain gave Hidalgo a down payment for the property in the form of two and one half ounces of methamphetamine. Hidalgo testified that he never agreed to sell his house for drugs and that no payment was ever made. Savoy wore a recording device to this meeting and the recording was admitted into evidence and played for the jury. Among other things, the recording indicates that Hidalgo agreed to sell his home in exchange for drugs at this meeting. Hidalgo also states that Savoy was armed during the meeting.

At trial, Hidalgo admitted that he signed the real estate agreement prepared during the meeting and that the purpose of the real estate agreement was to disguise the monthly methamphetamine payment by making it appear that $3000 was being paid monthly. Evidence also showed that Savoy returned with several others to view Hidalgo's Montgomery County property on July 13, 2004.[3]

---

[1]   Hidalgo's version of the story differs from Wilburn's. Hidalgo testified that Wilburn attempted to front Hidalgo a large amount of methamphetamine, but that Hidalgo only took a small amount for his personal use. Hidalgo also testified that he refused to allow Wilburn to sell methamphetamine from his residence.

[2]   Savoy signed a DEA Confidential Source Agreement which expressly stated that Savoy was not a DEA or government employee and could not represent himself as one.

[3]   Dionisio Garcia, also known as Juan Martinez and Saul Martinez, was the head of the drug
(continued...)

Hidalgo and fifteen co-defendants were charged in a thirteen-count indictment. The indictment charged Hidalgo in Count 1 with conspiracy to possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846 and in Counts 12 and 13 with conspiracy to commit money laundering and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i). In response to Hidalgo's motion in limine, the district court ordered the government to approach the bench before referring to any criminal or drug trafficking organization. Hidalgo asserted defenses of entrapment and public authority.

After the government rested its case during the jury trial, the court signed an order of acquittal as to Counts 12 and 13. Trial then continued as to Count 1. The court did not instruct the jury as to the public authority defense, even though it had been requested by Hidalgo. The court used the pattern jury instruction regarding entrapment. The jury convicted Hidalgo of conspiracy to possess with intent to distribute methamphetamine, and the district court sentenced Hidalgo to 100 months' imprisonment and four years' supervised release. . . . .

*United States v. Hidalgo*, No. 05-20971, 2007 WL 1108395 (5th Cir. April 10, 2007) (unpublished) (footnotes in original).  Hidalgo did not appeal further by filing a petition for a writ of certiorari with the United States Supreme Court.

Hidalgo now argues that he is entitled to relief from his conviction and sentence under 28 U.S.C. § 2255.  A liberal construction of Hidalgo's amended or supplemented § 2255 motion shows that he seeks relief primarily on grounds that he was denied effective assistance of counsel at his trial.  Hidalgo contends further that this Court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005), by increasing his sentence based on facts that were not found by a jury beyond a reasonable

---

[3](...continued)
   trafficking activity in Houston, Texas.

4

doubt.  (Doc. # 662, at 4-5).  The government, which has supplemented the record with an affidavit from Hidalgo's trial counsel, Mervyn M. Mosbacker, Jr., argues that Hidalgo is not entitled to relief.  After reviewing the entire record, the Court concludes that Hidalgo is not entitled to relief under § 2255 for reasons discussed below.

## II.   STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter.  *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  At the same time, however, *pro se* litigants are still

required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.  <u>DISCUSSION</u>

### A.  **Ineffective Assistance of Counsel**

Hidalgo contends that he is entitled to relief from his conviction because he was denied effective assistance of counsel at trial. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

6

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

According to the § 2255 motion, as amended, Hidalgo claims that his defense counsel, Mervyn M. Mosbacker, Jr., was deficient for the following reasons: (1) he failed or refused to object to the admission of a recorded conversation that occurred on June 16, 2004, at Hidalgo's house and a transcript of that recording (Government Exhibits 67, 67A); (2) he failed to call Chris Savoy as a witness; (3) he failed to object to testimony presented at the "11[th] Hour" by Mark Wilburn or to request *Jencks* Act material upon the completion of Wilburn's direct examination; (4) he refused to expose a "conspiracy" to seize Hidalgo's house; (5) he failed to object to a "fatal variance" between the indictment and the evidence of drug quality; (6) he failed to object to a "fatal variance" between the indictment and the evidence involving certain government agents as co-conspirators; and (7) he failed to object

7

to the jury instructions or to request an instruction on multiple conspiracies or the affirmative defense of duress.[4]  Each claim is discussed separately below.

### 1.    Failure to Object to a Tape Recording and Transcript

Hidalgo complains that Mosbacker failed to object to the admission of a digital audio recording created through a small device worn secretly by Christopher James Savoy ("Savoy") during a meeting that he attended with Bradford Mixon Crain ("Crain") and Hidalgo on June 16, 2004, at Hidalgo's house.  Hidalgo complains that Mosbacker further failed to object to a flawed transcript of that recording.  Hidalgo insists that admission of the recorded conversation violated his rights under the Confrontation Clause of the Sixth Amendment.   He also complains that the transcript of this recording was inaudible, inaccurate, or misleading, and confused the jury as a result.

The record of the trial and pre-trial proceedings shows that Mosbacker objected repeatedly to the recorded conversation and the transcript.  Mosbacker filed a written motion prior to trial objecting to the admissibility of the recorded conversation.  (Doc. # 242).  The Court held a hearing on that motion on March 24, 2005.  (Doc. # 261).  At that hearing, Mosbacker argued that the recording contained inadmissible hearsay and violated Hidalgo's rights under the Sixth Amendment Confrontation Clause.  (Doc. # 584, Hearing Transcript, March 25, 2005, at 107-111).  At the Court's request, Mosbacker submitted additional briefing on this issue.  (Doc. # 265).  The Court issued a nine-page memorandum and order

---

[4]    The Court has re-ordered Hidalgo's claims for ease of analysis.

8

denying Mosbacker's motion to exclude the recording, but ordered the government to provide a better transcript. (Doc. # 274).

Mosbacker filed additional written objections to the recording at trial, complaining that portions of the new transcript contained inaccuracies and mistakes. (Doc. # 304). The Court and the parties listened to the recording outside the jury's presence and discussed the transcript at length. (Doc. # 608, Transcript, May 9, 2005, at 347-83). The Court admitted the recording on the third day of trial over Mosbacker's repeated objections. (Doc. # 610, Transcript, May 11, 2005, at 33-34). At Mosbacker's request, moreover, the Court instructed the jury that the recording was evidence, but that the transcript was "intended as a limited or secondary guide only." (*Id.* at 41, 44-45). Based on this record, which shows that Mosbacker objected repeatedly to the recording and the transcript, Hidalgo fails to demonstrate that his counsel's performance was deficient.

Likewise, Hidalgo fails to show that he suffered any actual prejudice. On direct appeal, the Fifth Circuit upheld the recording's admissibility and expressly rejected Hidalgo's Confrontation Clause argument. In doing so, the Fifth Circuit also rejected Hidalgo's claim that portions of the recording were inaudible and misleading:

> Hidalgo argues that the district court improperly admitted the tape recording of the June 16th meeting for two reasons: (1) the foundation was inadequate and (2) it violated the Confrontation Clause. We review the district court's evidentiary rulings for abuse of discretion, *United States v. Cheramie*, 51 F.3d 538, 540 (5th Cir. 1995), and alleged violations of the Confrontation Clause de novo, *United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005).
>
> Tape recordings may be admitted into evidence if they are reliable. *See Thompson*, 130 F.3d at 683. To show reliability, the government must

9

establish that (1) a competent individual operated the recording device, (2) the recording equipment was in sufficient working order, (3) there were no material deletions, additions, or alterations to the recording, and (4) the speakers could be identified. *United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992). Yet, even if all these requirements have not been met, "the trial judge retains broad discretion to independently determine that the recording accurately reproduces the auditory experience." *Id*. at 436.

All the prerequisites to admitting a recording have been established. *See Stone*, 960 F.2d at 436. The evidence indicates that the equipment was in sufficient working order when Savoy used it and that Agent Sowell, a competent individual experienced in the use of this type of equipment, operated it. Despite Hidalgo's contention that Savoy altered the recording to manipulate the conversation, the recording device showed it operated without interruption during the time it was in Savoy's possession. Further, the evidence indicated Savoy did not even know how to use the equipment. Finally, the speakers in the recording could be identified.

Hidalgo's contention that the admission of the recording was error because portions of it were inaudible is also unfounded. Reversal of the admission of a recording due to inaudibility should occur only if " 'the inaudible parts are so substantial as to make the rest more misleading than helpful.'" *Thompson*, 130 F.3d at 683 (quoting *Gorin v. United States*, 313 F.2d 641, 652 (1st Cir. 1963)). After a thorough review of the record, we conclude that the inaudible portions were not substantial and did not result in misleading the jury. Accordingly, the government satisfied the foundational requirements for admitting the tape.

The admission of testimonial hearsay is barred under the Confrontation Clause unless the witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, — U.S. —, 126 S. Ct. 2266, 2274-75, 165 L.Ed.2d 224 (2006). A testimonial statement "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact' " and includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Crawford*, 541 U.S. at 51-52, 124 S. Ct. 1354.

The voices of Hidalgo, Crain, and Savoy can all be heard on the recording. Of those three individuals, only Savoy did not testify at trial and therefore was unavailable for cross-examination. Even if Savoy's statements are testimonial, they are not barred by the Confrontation Clause because they were offered not for truth, but instead for context and evidence of knowledge. The Confrontation Clause does not bar testimonial statements when they are offered for some purpose other than the truth of the matter asserted. *Id*., 541 U.S. at 59 n. 9, 124 S. Ct. 1354; *see also United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007) (holding that the Confrontation Clause did not bar the use of a testimonial statement when it was offered to show that a witness's trial testimony was not a recent fabrication).

In *Cheramie*, this court held that an unavailable witness's recorded statements did not violate the Confrontation Clause because the statements were part of a reciprocal and integrated conversation between the informant and the defendant and necessary to provide a context for the defendant's statements. 51 F.3d at 541. Here, the jury needed to hear Savoy's statements to understand the meaning of Hidalgo's responses. Additionally, Savoy's statements within the conversation showed that Hidalgo had knowledge of the unlawful plan-that Crain would pay for the property with drugs, not money. Hidalgo's knowledge of the unlawful agreement is an element of the conspiracy offense. *See Rosas-Fuentes*, 970 F.2d at 1382. Because Savoy's statements were offered to establish context and Hidalgo's knowledge and intent to participate in the unlawful plan, rather than the truth of the matter asserted, the Confrontation Clause does not bar Savoy's statements. *See Crawford*, 541 U.S. at 59 n. 9, 124 S. Ct. 1354; *see also Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L.Ed.2d 425 (1985).

*Hidalgo*, No. 05-20971, 2007 WL 1108395, **6-7.  Because the Fifth Circuit affirmed the admissibility of the recording, Hidalgo fails to show that the result of his proceeding would have been any different but for his counsel's performance at trial.

In conclusion, Hidalgo fails to allege or show that Mosbacker had, but failed to make, a valid objection to the recording's admissibility or to the transcript.  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.  *See*

*Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  Because Hidalgo has failed to demonstrate deficient performance or actual prejudice in his counsel's treatment of the recording or the transcript, he fails to establish a valid claim for ineffective assistance of counsel or to show that he is entitled to relief under 28 U.S.C. § 2255 on this issue.

### 2.    Failure to Call Christopher Savoy as a Witness

Hidalgo complains that Mosbacker failed to call Christopher Savoy as a witness for the defense and that, as a result, Hidalgo was denied his Sixth Amendment right to confront and cross-examine this witness.  Hidalgo argues that, in particular, that he was deprived of the right to confront and cross-examine this witness about comments made by Savoy on the June 16, 2004 recording.  This claim is without merit.

After closing arguments were given and the jury began to deliberate, Hidalgo complained about Mosbacker's failure to call Savoy as a witness.  (Doc. # 593, Trial Transcript, May 16, 2005, at 119).  Mosbacker explained that he contacted Savoy's attorney, who told him that, on advice of counsel, Savoy would not talk to Mosbacker before the trial.  (*Id.* at 119).  Mosbacker stated that he decided not to call Savoy as a witness because,

without the benefit of speaking with him before trial, "it would be a big risk, since I would have no idea what he would say in response to my questions." (*Id.* at 120). In the affidavit filed in response to Hidalgo's allegations of ineffectiveness, Mosbacker adds that Savoy's counsel informed him that his client "would assert his right not to incriminate himself if called to testify" and that Mosbacker "informed Mr. Hidalgo of this." (Doc. # 695, Affidavit).

Based on this record, Hidalgo does not show that Mosbacker was deficient for failing to call Savoy as a witness. Likewise, Hidalgo does not demonstrate that he was deprived of his constitutional right to confront or cross-examine Savoy. As the government correctly notes, Savoy's recorded comments were not testimonial as they were offered to establish context only or evidence of knowledge, not for the truth of the matter asserted. *See Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004). The government argues further that Savoy's recorded comments were without constitutional significance because they did not directly inculpate Hidalgo. *See, e.g.*, *United States v. Rodriguez-Martinez*, 480 F.3d 303, 308 (5th Cir. 2007) (observing that a non-testifying informant's hearsay identification of the defendant as the drug source violated the Confrontation Clause). Under these circumstances, the admissibility of Savoy's comments did not violate the Confrontation Clause. Hidalgo's argument to the contrary was raised and rejected by the Fifth Circuit on direct appeal, which upheld the admissibility of the June 16, 2004 recorded conversation and rejected Hidalgo's Confrontation Clause claim concerning Savoy's recorded comments. *See Hidalgo*, No. 05-20971, 2007 WL 1108395, at **6-7. Because the Fifth Circuit found no Sixth Amendment

13

violation, Hidalgo does not show that he suffered actual prejudice as the result of Savoy's failure to testify.  Absent a showing that Mosbacker was deficient, or that Hidalgo suffered actual prejudice as a result, Hidalgo fails to establish a valid ineffective-assistance claim on this issue or to show that he is entitled to relief under 28 U.S.C. § 2255.

### 3.    Failure to Object to Testimony by Mark Wilburn

Hidalgo complains that Mosbacker failed to object to testimony that was presented by government witness Mark Wilburn at the "11[th] Hour" of trial or to request material under the *Jencks* Act, 18 U.S.C. § 3500, upon the completion of Wilburn's direct examination.[5] Hidalgo complains further that Mosbacker failed to request evidence of Wilburn's criminal

---

[5]       The *Jencks* Act, which governs demands for production of statements or reports made by a government witness, provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b).  The term "statement," as used in this portion of the *Jencks* Act in relation to any witness called by the United States, means –

> (1)     a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2)     a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3)     a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e); *see also Jencks v. United States*, 353 U.S. 657 (1957).

record under *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972), regarding Wilburn's involvement in the murder of an individual named Mitch Hall.

Mosbacker notes in his affidavit that he "did object to [Wilburn's] testimony at trial on the basis that he had just been revealed as a witness a couple of days before trial and that the defense was unfairly prejudiced by the late disclosure of this witness." (Doc. # 695, Affidavit). Mosbacker advises, nevertheless, that he "had reviewed the reports concerning Mr. Wilburn prior to trial at the U.S. Attorney's Office and had made extensive notes concerning the contents of those reports." *Id.* The record supports Mosbacker's explanation.

The record reflects that Wilburn testified first before the Court, outside the jury's presence, before offering testimony before the jury. (Doc. # 609, Trial Transcript, May 10, 2005, at 211-227, 228-99; Doc. # 610, Trial Transcript, May 11, 2005, at 1-13). The record confirms that Mosbacker requested copies of Wilburn's criminal record and *Jencks* material before Wilburn gave any testimony. (Doc. # 609, Trial Transcript, at 211-12). The Court granted Mosbacker's request and the government complied. (*Id.* at 212). In that respect, Mosbacker reserved a portion of his questioning so that he could have additional time to review the records that he received. (*Id.* at 299). The Court granted this request also. (*Id.*).

This record shows that Mosbacker raised an objection to the government's untimely designation of Wilburn as a witness. The record further shows that, notwithstanding the late designation, Mosbacker received the records that he requested, that he was prepared, and that he capably questioned Wilburn at length on cross-examination. Hidalgo fails to establish

that his counsel's performance was deficient or that he was actually prejudiced as a result. It follows that Hidalgo fails to establish a valid ineffective-assistance claim on this issue or to show that he is entitled to relief under 28 U.S.C. § 2255.

### 4.    Failure to Present a Conspiracy Theory

Hidalgo complains that Mosbacker failed or refused to expose a "conspiracy" to seize Hidalgo's house.  Hidalgo refers to the recorded conversation from June 16, 2004, in which Crain, Savoy, and Hidalgo met at Hidalgo's house to discuss the sale of Hidalgo's property to Savoy and Crain in exchange for methamphetamine.  Hidalgo theorizes that Savoy and the law enforcement agents involved in the case were corrupt and that Savoy was conspiring against Hidalgo to seize his house.

Mosbacker notes that he did attempt to paint Savoy as a corrupt party and that he tried to show that the agents had engaged in misconduct by using Savoy as an informant, but Mosbacker explained further that he elected not to claim that the agents were corrupt because he had no evidence to support this theory:

> While I did not claim, as Mr. Hidalgo wished, that the agents involved were financially corrupt and stood to gain personally from the forfeiture of Mr. Hidalgo's property (because I had absolutely no evidence in support of that theory), I did on cross-examination of the agents and in argument point out that the informant, Chris Savoy, was corrupt and stood to gain financially by lying about Mr. Hidalgo and setting up the forfeiture.  I also implied through questioning that the controlling agent had lied to his supervisor about Chris Savoy's criminal background in order to sign him up as an informant, and that the agent had also totally failed to control the informant Savoy.

(Doc. # 695, Affidavit).  The record confirms that Mosbacker's strategy at trial was to argue that Savoy had a financial motive to record a conversation with Hidalgo talking about

16

"methamphetamine in relation to his property" so that the property could be seized.  (Doc.
# 593, Trial Transcript, at 29).  Mosbacker expressly argued that, the more people Savoy "set
up," the more money would be "put . . . in his pocket" by the agents.  (*Id.*).

Mosbacker's decision to focus on Savoy's financial motive constitutes trial strategy.
Strategic decisions made by counsel during the course of trial are entitled to substantial
deference on collateral review.  *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial
scrutiny of counsel's performance must be highly deferential" and that "every effort [must]
be made to eliminate the distorting effects of hindsight").  A reviewing court may not find
ineffective assistance of counsel on collateral review merely because it disagrees with
counsel's chosen trial strategy.  *See Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).
In that regard, "[a] conscious and informed decision on trial tactics and strategy cannot be
the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that
it permeates the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115,
1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing
*Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th
Cir. 1982)).

Hidalgo has not shown that Mosbacker's trial strategy was so ill chosen that it
rendered his entire trial unfair.  Accordingly, Hidalgo has not demonstrated deficient
performance or actual prejudice with respect to his counsel's chosen trial strategy.
Therefore, Hidalgo fails to establish a valid ineffective-assistance claim on this issue or to
show that he is entitled to relief under 28 U.S.C. § 2255.

### 5.      Failure to Object to a "Fatal Variance" - Drug Quality

Hidalgo complains that Mosbacker failed to object to a fatal variance between the indictment and the evidence regarding the quality of drugs involved in the conspiracy. Specifically, Hidalgo argues that the government failed to prove that the quality of drug involved was "actual methamphetamine" as opposed to a mere mixture containing methamphetamine. Hidalgo complains therefore that his counsel should have objected on these grounds. This claim is without merit.

The record refutes Hidalgo's claim. The record shows that Mosbacker raised the issue about whether there was evidence of actual methamphetamine at sentencing. (Doc. # 591, Sentencing Transcript, Oct. 25, 2005, at 15). The statutory range of punishment in this case depends on the quantity of drugs involved and whether the methamphetamine is pure (*i.e.*, actual methamphetamine) rather than a mixture or substance containing a detectable amount of methamphetamine.   If the offense involved fifty (50) grams or more of actual methamphetamine or five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, then the range of imprisonment is ten years to life. *See* 21 U.S.C. § 841(b)(1)(A)(viii).  If the offense involved five grams or more of actual methamphetamine or fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine, then the range of imprisonment is only five to forty years. *See*  21 U.S.C. § 841(b)(1)(B)(viii).

Mosbacker argued that, absent evidence that the drug involved in the offense was "actual methamphetamine as opposed to a [mixture or substance containing a detectable

amount methamphetamine]," the charge alleged in the indictment triggered only a five-year

statutory minimum sentence in Hidalgo's case.  (*Id.*).  Because Mosbacker raised the issue,

Hidalgo fails to show that his counsel's performance was deficient.  Likewise, Hidalgo fails

to demonstrate actual prejudice.  The Court ultimately decided to sentence Hidalgo to one-

hundred (100) months' imprisonment, which is consistent with the statutory minimum range

found in § 841(b)(1)(B)(viii).  (Doc. # 591, Sentencing Transcript, Oct. 25, 2005, at 9-10).

Hidalgo fails to show that he was entitled to a lesser sentence.  Absent a showing of deficient

performance or actual prejudice, Hidalgo fails to establish a valid ineffective-assistance claim

on this issue or to show that he is entitled to relief under 28 U.S.C. § 2255.

### 6.      Failure to Object to a "Fatal Variance" - Co-Conspirator Status

Hidalgo argues further that Mosbacker failed to challenge a fatal variance regarding

Savoy and Crain's status as informants, rather than co-conspirators. Hidalgo complains that

there was no evidence to support a charge of conspiracy because, as government agents,

Savoy and Crain could not conspire with anyone.  Hidalgo maintains, therefore, that

Mosbacker should have raised this objection at trial.

The record reflects that Mosbacker raised this issue at trial when he requested a jury

instruction on the issue of conspiracy with a government agent.  (Doc. # 612, Trial

Transcript, May 13, 2005, at 141).  He argued that, after June 9, 2004, Savoy was a

government agent who was "directing Crain, who was his subordinate. So essentially you

still have an agency problem there." (*Id.* at 141, 142).  The Court rejected Mosbacker's

argument that Crain was a government agent, but instructed the jury as follows as to Savoy:

19

> A government agent acting as a confidential informant cannot be a co-conspirator to a criminal charge. Therefore, if you find from the evidence that Christopher Savoy was the only person with whom Defendant TERRY HIDALGO agreed to possess with intent to distribute [methamphetamine] you must find him not guilty of the conspiracy charge alleged in the indictment. You are instructed that Christopher Savoy was not an agent of the Drug Enforcement Agency or any government agency prior to June 9, 2004.

(Doc. # 327, Court's Instructions to the Jury, at 18) (emphasis in original).  Because Mosbacker made the argument proposed by Hidalgo, Hidalgo fails to demonstrate deficient performance.

Hidalgo further fails to demonstrate actual prejudice.  In affirming the conviction, the Fifth Circuit rejected Hidalgo's claim that he was not guilty of conspiracy because he only conspired government agents:

> Finally, Hidalgo argues that he did not conspire with anyone because Savoy, as an informant, could not be a co-conspirator. But the jury could have inferred from the evidence a conspiracy existed between Hidalgo and others, such as Wilburn. *See United States v. Manotas-Mejia*, 824 F.2d 360, 365 (5th Cir. 1987) (holding that a conspiracy may exist among those individuals not acting as informants for the government, even though a government informant is involved in the plan). The jury could also have inferred that a conspiracy formed between Hidalgo and Savoy before Savoy became a government informant.

*Hidalgo*, No. 05-20971, 2007 WL 1108395, *4.  Hidalgo fails to demonstrate that there was any variance between the conspiracy charged in the indictment and the evidence presented at trial, which showed that Hidalgo entered a conspiracy to possess with intent to distribute methamphetamine and that the conspiracy involved non-government agents.  Because Hidalgo fails to demonstrate deficient performance or actual prejudice, he fails to establish

20

a valid ineffective-assistance claim on this issue or to show that he is entitled to relief under 28 U.S.C. § 2255.

### 7.    Failure to Object or Request Jury Instructions

Hidalgo complains that Mosbacker failed to request a jury instruction on multiple conspiracies or the affirmative defense of duress and that he failed to object to an erroneous jury instruction on Savoy's status as a government agent.   These arguments are addressed separately below.

### a.    Multiple Conspiracies

The record reflects that Mosbacker requested an instruction on the existence of multiple conspiracies and that the Court's instructions to the jury included this instruction. (Doc. # 327, Court's Instructions to the Jury, at 17).  Because the record refutes Hidalgo's claim, he fails to demonstrate deficient performance or actual prejudice as a result of any alleged failure to request this instruction.

### b.    Affirmative Defense of Duress

The issue of duress was raised during the course of preparing the jury instructions in connection with the defense of government entrapment. (Doc. # 612, Trial Transcript, May 13, 2005, at 132-33). Mosbacker presented a defense of entrapment at trial, arguing that Hidalgo was not pre-disposed to form an agreement to distribute a controlled substance and that, but for the inducement by Savoy and Crain, Hidalgo would not have so conspired. Accordingly, Mosbacker requested a jury instruction on the issue of entrapment.  (*Id.* at 132-34).

21

The Court noted that Hidalgo made extensive comments about "duress" during his testimony, but that it was a "very close question" about whether the alleged inducement or "degree of pressure" applied could qualify as entrapment.   (*Id.* at 133).   Ultimately, the Court submitted an instruction on the defense of entrapment in its instructions to the jury. (Doc. # 327, Court's Instructions to the Jury, at 18-19).   Mosbacker did not request an instruction on the issue of duress and the Court's instructions to the jury did not include one.

Duress is an affirmative defense that has been developed through the common law and adopted by the federal courts. *See United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005) (citing *United States v. Bailey*, 444 U.S. 394, 409-10 (1980)), *aff'd*, — U.S. —, 126 S. Ct. 2437 (2006). To succeed on a duress defense, a defendant must show the following:

1.   that he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

2.   that he had not recklessly or negligently placed herself in a situation in which it was probable that he would be forced to choose the criminal conduct;

3.   that he had no reasonable legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

4.   that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*Dixon*, 413 F.3d at 523 (quoting *United States v. Willis*, 38 F.3d 170, 175 (5th Cir. 1994); (quoting *United States v. Liu*, 960 F.2d 449, 453 (5th Cir.1992)). In short, the duress defense requires an objective inquiry into whether a defendant's conduct, although illegal,

represented his only reasonable alternative to serious bodily injury or death. *Dixon*, 413 F.3d at 523.

Mosbacker explains that he did not request an instruction on the issue of duress because the testimony did not warrant such an instruction:

> . . . In my opinion, Mr. Hidalgo's testimony did not support a defense of duress.  In his testimony, he claimed that he did not enter into an agreement with Savoy and others to distribute methamphetamine.  For a defense of duress, the underlying premise is that the defendant in fact committed the offense, but did so because he was coerced or threatened into doing so.  Mr. Hidalgo has never admitted to actually committing the offense, and he did not admit to it on the stand.  This defense theory would not only have conflicted with the testimony of Mr. Hidalgo, but also with the defense theory presented at trial that Mr. Hidalgo had never actually entered into an agreement to violate the law.

(Doc. # 695, Affidavit).  Although Hidalgo testified that he felt pressured by others to participate in the methamphetamine conspiracy, a review of Hidalgo's testimony confirms that he did not admit engaging in a conspiracy to possess methamphetamine under a threat of imminent serious bodily injury or death.  (Doc. # 612, Trial Transcript, May 13, 2005, at 22-125).  Hidalgo does not demonstrate that he was entitled to a jury instruction on the issue of duress or that Mosbacker was deficient for failing to ask for one.  Absent a showing of deficient performance or actual prejudice, Hidalgo does not establish a valid ineffective-assistance claim on this issue or to show that he is entitled to relief under 28 U.S.C. § 2255.

### c.      Savoy's Status as a Government Agent

Hidalgo complains that Mosbacker failed to object to a flawed jury instruction regarding Savoy's status as a government agent.  Hidalgo complains specifically about the

portion of the instruction, which is set forth in full above, stating that Savoy was not a government agent prior to June 9, 2004.  (Doc. # 327, Court's Instructions to the Jury, at 18). The record reflects that Mosbacker did object to this instruction.  (Doc. # 612, Trial Transcript, May 13, 2005, at 142).  The Court overruled the objection, stating that "the only argument the Defense legitimately has on Savoy being a government agent, relates to his conduct on or after June 9[, 2004]."  (*Id.* at 142, 143-44).  Hidalgo, who does not allege specific facts or present any evidence that Savoy was a government agent prior to June 9, 2004, fails to demonstrate otherwise.  Hidalgo fails to establish deficient performance with respect to his counsel's performance and, because he does not show that the instruction was given in error, he further fails to demonstrate actual prejudice.

In summary, the record demonstrates that Mosbacker was well prepared, that he capably cross-examined the government's witnesses, and that he cogently and aggressively defended Hidalgo throughout the trial.  Hidalgo has not demonstrated that Mosbacker was deficient in any way or that, but for any alleged deficiency, there was a reasonable probability that the result of the proceedings would have been different.  None of Hidalgo's allegations of ineffective-assistance have merit.  Accordingly, Hidalgo is not entitled to relief under 28 U.S.C. § 2255 on any of his ineffective-assistance claims.

## B.    Sentencing Issues

Hidalgo contends that this Court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005)*,* by increasing his punishment under the Sentencing Guidelines based on facts not found by a jury beyond a reasonable

24

doubt regarding his role in the offense, his criminal record, and by finding that he engaged in obstruction of justice. (Doc. # 662, at 4-5). The government argues that "[s]entencing issues are not cognizable in a § 2255 motion." (Doc. # 695, at 10, n.9).

To the extent Hidalgo contends that this Court applied the Sentencing Guidelines incorrectly, claims concerning a district court's technical application of the Sentencing Guidelines are not cognizable on collateral review. *See Kinder v. Purdy*, 222 F.3d 209, 211 (5th Cir. 2000), *cert. denied*, 531 U.S. 1132 (2001); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Accordingly, these claims do not merit consideration under 28 U.S.C. § 2255.

Likewise, to the extent that Hidalgo invokes *Apprendi* and *Booker*, his claims are barred from collateral review by the doctrine of procedural default. The record reflects that Hidalgo did not challenge his sentence or the calculation thereof on direct appeal. Thus, any claim that the Court enhanced Hidalgo's sentence in violation of *Apprendi* or *Booker* is procedurally barred. Under the doctrine of procedural default, a § 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for purposes of collateral review. *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000)). When a defendant has procedurally defaulted a challenge by failing to raise error properly on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate (1) cause and prejudice, or (2) that he is "actually innocent" of the crime for which he was convicted.

25

*See Bousley v. United States*, 523 U.S. 614, 622 (1998). Hidalgo does not satisfy the cause-and-actual-prejudice exception to excuse his procedural default.[6]  Likewise, Hidalgo does not show that he is actually innocent and the record refutes any such claim.  Accordingly, Hidalgo's constitutional arguments are barred by the doctrine of procedural default.

Alternatively, Hidalgo's claims concerning his sentence have no merit.  The trial and sentencing in this case occurred well after the Supreme Court decided *Booker*, which made the Sentencing Guidelines advisory.  Using the advisory Guidelines, the Probation Office determined in its initial Pre-Sentence Report ("PSR") that Hidalgo merited a base offense level of 34 because he was accountable for 3.3 kilograms of methamphetamine.  After considering objections filed by Mosbacker and an amended PSR from the Probation Office, the Court held Hidalgo responsible for 120 grams of methamphetamine.  (Doc. # 591, Sentencing Transcript, at 9).  Accordingly, the Court reduced Hidalgo's base offense level to 26.  (*Id.* at 9, 19).  The Court increased the base offense score by two levels for obstruction of justice, finding that Hidalgo committed perjury during his testimony.  (*Id.* at 20-25).  In doing so, the Court considered the implications of its finding under *Booker* and

---

[6]    Ineffective assistance of counsel can constitute cause for a procedural default under certain circumstances.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however;  the assistance must have been so ineffective as to violate the Federal Constitution."  *Id.*  A review of the § 2255 motion filed by Hidalgo, as well as the supporting memorandum and the three supplements that he has filed, shows that he did not raise an independent claim of ineffective assistance of counsel on appeal.  (Docs # 655, # 662, # 670, # 672).  Even if the Court were to assume that cause exists to excuse the procedural default in this instance, Hidalgo does not demonstrate that he will suffer actual prejudice because he fails to establish that any of his defaulted claims have merit or that the Court would impose a lesser sentence under the facts of this case.

concluded that Hidalgo was entitled to the two-level increase.  (*Id.*).  The two-level increase for obstruction of justice gave Hidalgo a total offense level of 28.  Hidalgo's prior convictions yielded five criminal history points, placing him in Criminal History Category III.  Accordingly, Hidalgo faced a potential range of imprisonment from 97 to 121 months. The Court sentenced Hidalgo toward the lower end of the advisory Guideline range to serve 100 months in prison.

Hidalgo does not show that he was sentenced in violation of *Booker* or that the punishment imposed was unreasonable under the circumstances of this case.  Accordingly, the Court concludes that Hidalgo's challenge to his sentence is without merit.  Because none of the claims raised by Hidalgo merit relief under 28 U.S.C. § 2255, the government's motion to dismiss is granted.

## IV.   HIDALGO'S DISCOVERY MOTIONS

In addition to his motion for relief under 28 U.S.C. § 2255, Hidalgo has filed more than one motion for discovery.  (Docs. # 678, # 680).  Discovery is limited in proceedings governed by § 2255.  In fact, Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts permits discovery only if "good cause" is shown.  28 U.S.C. foll. § 2255 Rule 6(a).  Interpreting a similar rule governing proceedings under 28 U.S.C. § 2254, the Fifth Circuit has held that "good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief."  *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000);  *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  Before authorizing discovery,

the Court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.* In that regard, petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.* "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

Hidalgo requests information on Drug Enforcement Agents Brad Sal and Mark Terry, as well as assorted information about informant Christopher Savoy, among other things. In particular, Hidalgo requests: "(1) [Christopher] Savoy's background information, criminal history, statements, debriefs and DEA informant reports, (2) DEA's pay record on Savoy, (3) Savoy's FBI informant agreement, (4) Private Investigation file on Savoy, (5) FBI's Mitch Hall murder file, May 17, 2004, (6) E. Montgomery County, TX, Mitch Hall murder file, Detective Rodgers, (7) Justice Department's Internal Affairs Investigation file on Agent Sal and Agent Terry, June 14, 2005, (8) Court Order, Warrant and the Supporting Affidavit authorizing the 'N-16' interception, (9) Chemical analysis on evidence, (10) Voice analysis of 'N-16', [and] (11) 'Bill of Particulars' on the Hidalgo Indictment." (Doc. # 680, at 5-6). Hidalgo appears to allege that this information will yield new favorable evidence that Agents Sal and Terry were corrupt and that they paid Christopher Savoy to frame him. (Doc. # 680, at 3).

Hidalgo fails to provide specific facts showing that, if the proposed discovery were allowed, he would be entitled to prevail.  In that regard, Hidalgo's conclusory request falls far short of the showing of good cause necessary to permit discovery under Rule 6.  Accordingly, Hidalgo's motions for discovery (Doc. # 678, # 680) are **DENIED**.

## V.   CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

29

that the issues presented were 'adequate to deserve encouragement to proceed further.'"

*Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the

petitioner must show not only that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529

U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring

further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the entire record of this criminal proceeding, the Court concludes

that jurists of reason would not debate whether the movant has stated a valid claim or

whether any procedural ruling in this case was correct.   Accordingly, a certificate of

appealability will not issue.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The defendant's motions for discovery (Docs. # 678, # 680) are **DENIED**.

2.      The government's motion to dismiss (Doc. # 695) is **GRANTED**.

3.      The defendant's motion to vacate, set aside, or correct sentence under 28

U.S.C. § 2255 as amended (Doc. # 655) is **DENIED** and the corresponding

civil action (H-07-1511) is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order in the corresponding civil case (Civil Action No. H-07-1511).

SIGNED at Houston, Texas, on <u>October 31st</u>, 2007.


Nancy F. Atlas
United States District Judge